**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AARON ALBERT MITCHELL, JR., | **Case No. 24–cv–07167–ESK–SAK** |
| **Plaintiff,** | |
| v. | **OPINION** |
| TOWNSHIP OF WILLINGBORO, *et al.*, | |
| **Defendants.** | |

**KIEL, U.S.D.J.**

Plaintiff alleges that defendants discriminated against him based upon his disability when they denied his applications to construct a nonconforming accessory structure that he could have used to store property that was in an existing garage, so that he could park his car in the existing garage.   Because plaintiff fails to adequately link defendants' actions to his alleged harms, defendants' motion to dismiss will be **GRANTED** in part and **DENIED** in part.

## I.    FACTUAL BACKGROUND[1]

Plaintiff Aaron Albert Mitchell, Jr. owns a single-family house in Willingboro Township, New Jersey (Township).   The property is in an R-2 residential zoning district.   (Compl. ¶¶ 1, 24.)

---

[1] The facts are taken from Mitchell's second amended complaint (Complaint) (ECF No. 55 (Compl.)), which is the operative complaint.

### A.      Plaintiff's Zoning Applications

In early 2022, Mitchell applied to the Township Zoning Board of Adjustment ("Board") for approval to construct a large, detached accessory structure on his property.   Mitchell sought a use variance and related bulk variances to construct an "L-shaped" detached accessory structure to store work equipment, tools, lawn equipment, collector vehicles, and other personal property.   (Compl. ¶¶ 30–33.)

The Board conducted a public hearing on Mitchell's first application on May 4, 2022.   Following the hearing, the Board denied the application.   That denial was memorialized by Resolution No. ZB-2022-7, adopted on July 6, 2022. (ECF No. 59–2 pp. 3–17 (First Denial).)

Mitchell submitted a second application seeking approval for a detached accessory structure of similar size.   The Board conducted a public hearing on the second application on October 5, 2022 and again denied the requested relief. The denial was memorialized by Resolution No. ZB-2022-9, adopted on November 9, 2022. (ECF No. 59–2 pp. 18–33 (Second Denial).)

### B.      Alleged Discrimination and Municipal Conduct

Mitchell alleges that the denials of his zoning applications constituted discrimination based on disability and a failure to provide reasonable accommodations in violation of the Fair Housing Act (FHA), the Americans with Disabilities Act (ADA), and the New Jersey Law Against Discrimination (NJLAD).   (Compl. ¶¶ 68–92.)   He contends that the variances were necessary to afford him equal use and enjoyment of his dwelling.   (*Id.*)

Mitchell further alleges that Township officials, including Zoning Officer Theodore Evans and Construction Official Steve Buchhofer, engaged in improper conduct in connection with zoning enforcement and administration. (*Id.* ¶¶ 40–55.)   He asserts that officials entered his property without

authorization, failed to follow zoning procedures, and deprived him of due process.   (*Id.* ¶¶ 96–123.)

### C.    PROCEDURAL HISTORY

Mitchell commenced this action on June 26, 2024. (ECF No. 1) and filed the operative Complaint on April 7, 2025 (*see* Compl.).

Mitchell asserts claims for violation of: (1) the FHA; (2) the ADA; (3) the NJLAD; (4) the New Jersey Municipal Land Use Law (NJMLUL); (5) the Fourth Amendment; and (6) the Fourteenth Amendment.   Mitchell also asserts claims for (7) defamation and emotional distress; and seeks (8) declaratory judgment; and (9) an injunction.   (*See id.* ¶¶ 89–150.)

Defendants filed a motion to dismiss the Complaint (Motion) (ECF No. 59 (Mot.)), along with a brief in support of the Motion (ECF No. 59–1 (Defs' Br.).). Mitchell filed a brief opposing the Motion.  (ECF No. 60 (Opp'n Br.).) Defendants filed a reply in further support of their Motion.  (ECF No. 61 (Reply).)   I held a hearing (Hearing) on a prior iteration of the Motion on March 7, 2025.   (ECF No. 50; *see* ECF No. 53 (Hearing Tr.).)

### II.   STANDARD

### A.    Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim under Rule 12(b)(6), courts must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party.  *Makky v. Chertoff*, 489 F. Supp. 2d 421, 429 (D.N.J. 2007).   A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." (*Id.* at 679). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Connelly*, 809 F.3d at 790.

## III.   DISCUSSION

Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure (Rule) 12(b)(6) because: (1) the Complaint is still an impermissible shotgun pleading (Defs' Br. pp. 17–20); (2) the FHA and ADA claims are time barred (*id.* pp. 20–22); and (3) for various reasons, the Complaint fails to state a claim upon which relief may be granted. (*Id.* pp. 23–42.)[2]

---

[2] In support of the Motion, defendants submitted the resolutions denying Mitchell's applications and the transcript of the Hearing (ECF No. 59–2), items which are not included in the Complaint. When resolving a motion to dismiss, courts may consider matters of public record and documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Hearing transcript is a matter of public record. And Mitchell expressly challenges the denials in the Complaint. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."). Accordingly, I will consider these documents to resolve the Motion.

### A.    Statute of Limitations (First and Second Counts)

To dismiss a claim at the pleadings stage because it is barred by a statute of limitations, the time bar must be clear on the face of the complaint.   *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).   A statute of limitations defense is required to be pleaded as an affirmative defense in the answer however, defendant may raise a limitations defense by motion under Rule 12(b)(6) only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."   *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975)).

Courts will not dismiss cases based on a statute of limitations defense unless a "plaintiff effectively [pleads himself] out of court by alleging facts that [are] sufficient to establish the defense."   *See Schmidt*, 770 F.3d at 252 (internal quotations omitted) (citing *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir 2006)); *compare, e.g.*, *Doe v. Hosbach*, 24–4756, 2025 WL 2444239, at *3 (D.N.J. Aug. 25, 2025) (refusing to assume a plaintiff's birthday because it is not the plaintiff's burden to anticipate and refute affirmative defenses), *with Barker v. United Airlines, Inc.*, 23–3065, 2024 WL 378633, at *5 (D.N.J. Feb. 1, 2024) (finding claim time-barred when an email integral to the plaintiff's claims conclusively established the date of accrual outside the statute of limitations).

Here, the parties agree that Mitchell's FHA and ADA claims are subject to a two-year statute of limitations.   (Defs' Br. p.20; Opp'n Br. p.11.)   But they disagree on when the two-year period accrued.   Defendants argue that Mitchell's claims accrued on May 4, 2022 when "[his] initial land use application was denied by the [Board]."   (Defs' Br. p.21.)   Mitchell asserts that "the relief sought against the municipal defendant[s] relates to [the October 2022] denial, and not the earlier denial in May of 2022," and as such, all his claims "accrued sometime after October 5, 2022."   (Opp'n Br. p.11; Compl. ¶88.)

The Complaint does not establish that Mitchell filed outside the limitations period. Defendants refer to the Board's denial of Mitchell's first land use application, "which undisputably occurred on May 4, 2022." (Reply p. 12.) The only mention of this time period in the Complaint is where Mitchell notes how he "was denied and told he need[ed] to make more changes to his application and proposed accessory structure," and that he was allegedly "unaware of what a reasonable accommodation … is." (Compl. ¶ 22.) Accepting its allegations as true, the Complaint does not establish that Mitchell brought his claims outside the statute of limitations. *See Hanna*, 514 F.2d at 1094. Because there is nothing on the face of the Complaint where Mitchell pleads himself out of this case, defendants' Motion will be denied as to the statute of limitations argument. *See Schmidt*, 770 F.3d at 252.

### B.  Failure to State Substantive FHA and ADA Claims

"A plaintiff may prove a violation of the FHAA, ADA or Rehabilitation Act in one of three ways: (1) showing disparate treatment, also termed intentional discrimination, (2) showing disparate impact, or (3) showing a refusal to make reasonable accommodations." *Lapid Ventures, LLC v. Twp. of Piscataway*, No. 10–6219, 2011 WL 2429314, at *5 (D.N.J. June 13, 2011). Under the third method, a viable claim under the FHA or ADA requires plaintiff to allege that "the requested accommodation is (1) reasonable and (2) necessary to (3) afford [persons with disabilities] an equal opportunity to use and enjoy housing." *Lapid-Laurel LLC v. Zoning Bd. of Adjustment of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002) (internal quotations omitted). Further, the plaintiff in a reasonable accommodations case "must establish a nexus between the accommodations that he or she is requesting, and their necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing." *Id.* at 459.

6

Mitchell asserts that the Board denied his applications to build the accessory structure but did not require the owner of a different property to follow the same procedures as Mitchell. (Compl. ¶ 90.)  Mitchell further argues that defendants failed to change their policy and practice to accommodate his disability.  (*Id.* ¶ 96.)  As a result, Mitchell alleges, he "is unable to enjoy the intended use of his [p]roperty and dwelling nor is given an equal opportunity to enter and exit his home safely, and [is prevented] from having the ability to maintain his property by limiting his storage and access to the tools and equipment necessary to maintain his property."  (*Id.* ¶ 97.)  In short, defendants actions allegedly "den[y] [Mitchell] an equal opportunity to be self-sufficient."  (*Id.*; *see also id.* ¶ 105.)

Defendants counter that Mitchell is asking for special treatment to build a structure to store his tools and not seeking equal opportunity to use and enjoy his dwelling.  (Defs' Br. p. 22.)

Defendants have the better of the arguments.  As I noted at the Hearing, Mitchell's request is to be able to build a nonconforming accessory structure to store items currently in his garage, so he can then park his car in the garage. (*See* Hearing Tr. pp. 5–6.)  This Court has declined to find equal opportunity violations in similar cases.  *See Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 250 (D.N.J. 2001).  In *Sporn*, the plaintiff was a condominium owner with a disability who requested an accessible parking space closer to the entrance of his building.  *Id.*  The condominium association offered Sporn an accessible space so long as he complied with the association's parking policy and gave up his deeded non-accessible space.  *Id.*  He refused, and sued the association, claiming it failed to provide a reasonable accommodation.  *Id.* The Court determined that Sporn actually wanted to have two spaces to accommodate visiting family members—meaning that his "request for

7

'reasonable accommodation' was really a request for accommodation coupled with a demand for special treatment." *Id.*

Here, Mitchell is not seeking an "accommodation" so he can have a space to park his car closer to his house. He already has a garage where he can park close to the house. Instead, Mitchell wants additional space to store items that are in his garage. He is not asking the Township for an accommodation that would then permit him to have an equal opportunity to use and enjoy his dwelling, but rather for special treatment in constructing an additional structure to store his other items.

Mitchell's reliance on an alleged need for a therapy pool is of no moment. (Opp'n Br. pp. 12–14.) "[A] federal court reviewing an FHAA reasonable accommodations challenge to a decision of a local land use board … should limit their review to the materials that were presented to the local land use board" except in circumstances not presented here. *Lapid-Laurel LLC*, 284 F.3d at 450. Although the Complaint attempts to link Mitchell's need for a therapy pool to the denial of his applications, nothing in the Board's denial reflects any consideration of Mitchell's therapy pool. (*See generally* Second Denial.) As I noted at the Hearing, the Court has to consider Mitchell's application in its totality. (Hearing Tr. p. 7:13–25.) Nothing in the record shows that the Board denied Mitchell's application based on consideration of his therapy pool. Rather, the Board stated that Mitchell wanted a new garage "so he can move all of the contents out of the attached two car garage into the new proposed detached garage." (Second Denial p. 22.)

Because Mitchell has not shown the required nexus between his requested accommodations and their necessity to provide him equal opportunity to use and enjoy his dwelling, the Motion will be granted as to the First and Second Counts of the Complaint.

8

### C.    Sixth Count (Fourteenth Amendment)

#### 1.    Monell Liability

"[A] municipality can be found liable under §1983 only where the municipality *itself* causes the constitutional violation at issue."   *City of Canton, Oh. v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694–95 (1978)).   The Court's "first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."   *Id.*; *see also Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (noting that plaintiffs must show that a municipal policy or custom was the proximate cause of their injuries).   As a part of this, plaintiffs necessarily "must identify a custom or policy, and specify what exactly that custom or policy was."   *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009).

"Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."   *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."   *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

Here, Mitchell broadly alleges that defendants violated his due process and equal protection rights under the Fourteenth Amendment. (Compl. ¶130.)   However, Mitchell has not identified any Township policy or custom that gave rise to his alleged injuries.   Instead, Mitchell makes conclusory allegations that the Township failed to train its board members not to discriminate against individuals with disabilities.   (Compl. ¶125.)   But these

allegations are not enough.   "*Monell's* rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees … represents a policy for which the city is responsible."   *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Mitchell relies almost entirely on a single allegedly comparable property. Mitchell alleges that another property owner was allowed to construct a non-conforming accessory structure without undergoing the same zoning process required of him.   (Compl. ¶ 130.)   But allegations of one comparator property do not plausibly establish a municipal custom or policy.   *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (explaining that a custom is a "widespread practice"); *Solomon v. Philadelphia Hous. Auth.*, 143 F. App'x 447, 457 (3d Cir. 2005) ("A custom under *Monell* can usually not be established by a one-time occurrence.")   And even if they could, the Complaint provides no facts establishing that the comparator property was similarly situated to Mitchell's property "in all relevant aspects," as required to establish an Equal Protection claim.   *See Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008). Finally, Mitchell has not shown that any policy or custom proximately caused his injuries.   *See Est. of Roman*, 914 F.3d at 798.

Because Mitchell does not identify a Township policy or custom that deprived him of his constitutional rights, Mitchell has failed to establish a *Monell* claim against the Township.

### 2.   Procedural Due Process

The Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, § 1.   "A procedural due process claim is subject to a 'two-stage' inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute 'due process of law."   *Schmidt v.*

10

*Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (other internal quotations omitted). "A state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a government body, whether or not the plaintiff avails [themself] of the provided appeal mechanism." *Mendoza v. Larotonda*, 270 F. App'x 157, 158–59 (3d Cir. 2008).

Here, the Sixth Count of the Complaint alleges that defendants took intentional acts "to deny [Mitchell] exercise of his due process rights under the [NJ]MLUL regarding procedures, and his due process and appeal rights of the Board's actions to the local municipal council and to the New Jersey Superior Court," and that these acts "were arbitrary, capricious, and unreasonable in violation of the Fourteenth Amendment." (Compl. ¶¶ 123–24.) Defendants question whether Mitchell has asserted a property interest protected by the Fourteenth Amendment's due process clause and argue that even if Mitchell had such a protected interest, New Jersey state law provides adequate remedies. (*Id.* pp. 30–31.) Mitchell counters that even though Mitchell had "the technical right to file an action in the Superior Court and then to appeal any unfavorable ruling from that court to the Appellate Division, defendants' violation of the process owed to [Mitchell] under the [NJ]MLUL effectively robbed him of a meaningful recourse under State law." (Opp'n Br. p. 17.)

I agree with defendants. Assuming, without deciding, that Mitchell had a constitutionally protected property interest, New Jersey provides adequate procedural due process to rectify errors by local zoning boards. *See John E. Long, Inc. v. Borough of Ringwood*, 61 F. Supp. 2d 273, 279 (D.N.J. 1998) (finding that "[t]he State of New Jersey provides a full judicial mechanism for challenging adverse zoning decisions"). Specifically, local zoning boards can decide appeals of zoning officer's enforcement of a zoning ordinance, interpret the zoning law, and grant variances and other relief. *See id.* If parties disagree with a zoning board, they can seek review, a hearing, and relief by

11

filing a complaint in the New Jersey Superior Court, Law division.   *Id.*; *see also* N.J. Court Rule 4:69 (Actions in Lieu of Prerogative Writs).

Mitchell argues that *John E. Long, Inc.* should not apply here because defendants' alleged delays in producing a signed resolution and transcript "effectively thwarted plaintiff's right to meaningful review."   (Opp'n p. 17.) But Mitchell offers no authority to support his claim that New Jersey lacks adequate procedural measures to challenge zoning board decisions.   In fact, he admits that he is availing himself of state remedies through the New Jersey court system. (*See id.* (discussing the pending state-court appeal).) Consequently, I agree with the conclusion in *John E. Long, Inc.* and find that Mitchell has failed to establish his procedural due process claims.   *See De Sapio Props. #Six, Inc. v. Alexandria Twp.*, No. 16–5770, 2017 WL 1591849, at *5 (D.N.J. Apr. 28, 2017) (dismissing procedural due process claims when the plaintiffs failed to articulate why the court should abandon *John E. Long, Inc.* and other precedent).

Accordingly, the Motion will be granted as to the Sixth Count.

### D.    Fifth Count (Fourth Amendment)

#### 1.    Severance

Rule 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party.   The court may also sever any claim against a party."   Fed. R. Civ. P. 21.   "The decision to sever a claim or to try it separately is left to the discretion of the trial court."   *Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc.*, 49 F. Supp. 2d 709, 721 (D.N.J. 1999). An order severing claims effectively "transform[s] the claims into an entirely independent action with an independent case number and an independent judgment."   *Id.*   "[W]hen a court 'severs' a claim against a defendant under Rule 21, the suit simply continues against the severed defendant in another guise."   *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006).   Further, "[t]he

statute of limitations is held in abeyance, and the severed suit can proceed so long as it initially was filed within the limitations period."   *Id.*

"In evaluating whether to sever a party pursuant to Federal Rule of Civil Procedure 21, courts have construed Rule 20(a) as establishing a two-part test, both parts are required for joinder to be permitted."   *Ksepka v. U.S. Postal Serv.*, No. 24–301, 2025 WL 226332, at *2 (D.N.J. Jan. 16, 2025), *reconsideration denied*, 2025 WL 958913 (D.N.J. Feb. 20, 2025), *and report and recommendation adopted*, 2025 WL 2244620 (D.N.J. Aug. 5, 2025).   "First, claims brought against defendants to be joined must stem from the same transaction or occurrence, and second, they must share a common question of law or fact."   *Emmanouil v. Roggio*, No. 06–1068, 2007 WL 1174876, at *4 (D.N.J. Apr. 19, 2007).

Here, Mitchell's Fourth Amendment claim stems from a January 12, 2024 incident where Evans allegedly trespassed onto Mitchell's property beyond the rear privacy fence after placing a stop work order on Mitchell's front kitchen window.   (Compl. ¶¶ 52–54.)   Conversely, all the remaining claims arise from the Board's denial of Mitchell's variance application in October 2022.   Because the Fourth Amendment claim results from a different transaction or occurrence from all other claims, in the interests of judicial economy, I will sever the Fifth Count, and Mitchell, if he chooses to pursue the claim, shall file an amended complaint.[3]

### E.   Remaining State-Law Claims

As all the federal claims in the Complaint have been dismissed or severed, the Court declines to exercise supplemental jurisdiction on the remaining state

---

[3] Defendants argue that each count of the Complaint fails to differentiate between the actions of each defendant.   I do not have to address this argument because the only remaining federal claims (the Fifth Count relating to the trespass onto Mitchell's property) will be severed.

claims. Accordingly, the remaining state claims will be dismissed without prejudice for lack of subject matter jurisdiction.

## IV. CONCLUSION

Defendants' Motion is **GRANTED** as to the First, Second, and Sixth Counts, which are hereby **DISMISSED** with prejudice as to all defendants. The Court declines to retain supplemental jurisdiction over the State Law Claims, which are **DISMISSED** without prejudice for lack of subject matter jurisdiction. The Fifth Count (Fourth Amendment claim) is hereby **SEVERED**. An order accompanies this opinion.

       */s/ Edward S. Kiel*

**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Date: March 11, 2026

14